REEDER v. MEREDITH.

Opinion delivered March 3, 1906.

78 | 111
84 | 558

1. TRUST—ADMINISTRATION.—An administrator is a trustee for all who are interested in the estate which he has in charge to administer. (Page 114.)

2. SAME—WHEN PURCHASE BY TRUSTEE UPHELD.—To the general rule that a trustee can not buy from the beneficiary an exception exists where there is a distinct and clear contract, ascertained after a jealous and scrupulous examination of all the circumstances, and where there is a fair compensation without fraud, concealment or advantage taken by the trustee of information acquired by him in the character of trustee. (Page 114.)

3. TRUST—RELATION OF CONFIDENCE.—In business dealings between a brother and sister, the dependence of the sister upon the brother and her confidence that he would do right made it imperative that he should use the utmost good faith. (Page 116.)

4. DEED—VALIDITY—APPORTIONMENT.—Where a deed of conveyance is entire, and is voidable in part on account of fraud, it is voidable as to all, there being no apportionment. (Page 116.)

5. TRUST—IMPROVEMENTS.—In an action by an heir to set aside a purchase by the administrator of lands of the estate, the defendant is not entitled to credit for improvements placed on the lands under contract with the widow and paid for by her. (Page 117.)

6. SAME—IMPROVEMENTS—GOOD FAITH.—Where a trust is enforced against a purchaser of land, he is not entitled to compensation for improvements placed by him thereon if his purchase was made in bad faith. (Page 117.)

7. SAME—TENDER OF CONSIDERATION RECEIVED.—Where the administrator bought the interest of an heir in the ancestral estate, and was sued by the latter to enforce a trust as to part of the property purchased, it was unnecessary for the heir to tender the consideration received if the administrator had realized from the residue of the property more than he paid for all of it. (Page 117.)

8. SAME—ACCOUNTING FOR PROFITS.—Where an administrator purchased from an heir of the estate (1) the heir's reversionary interest in the dower and homestead lands, and (2) such heir's interest in the residue of the lands, and the heir sued to enforce a trust as to the first class of lands only, the heir is not entitled to an accounting by the administrator of his profits upon the second class of lands. (Page 117.)

Appeal from Howard Chancery Court; *James D. Shaver,* Chancellor; affirmed.

Annie Meredith, one of the four daughters of Sam Reeder, who died intestate, sued her brother, W. S. Reeder, who was

administrator of the estate of their father, alleging that at his death her father owned the following land, towit: "The southeast quarter of the northeast quarter; the north half of the northwest quarter; the southeast quarter of the northwest quarter; the north half of the southwest quarter; the southeast quarter of the southwest quarter, all in section 19, and the northeast quarter of the southwest quarter of section 20, all in township 11 south, range 27 west. That of the lands belonging to her father the following, towit: The south half of the northeast quarter; the northeast quarter of the northeast quarter and the east half of the northwest quarter, of section 19, and the northeast quarter of the southwest quarter of section 20, all in township 11 south, range 27 west, were set apart and assigned to L. C. Reeder, wife to the said Sam Reeder, as her dower and homestead. That defendant approached plaintiff, being at the time administrator as aforesaid, to buy all her interest in the said estate except the dower and homestead, which had been assigned to the widow, and represented to her that a fair value of her interest therein, after paying the debts, would be $225, which amount he offered for her interest in said estate. That, defendant being brother of plaintiff and also administrator of said estate, she relied upon his representations and sold him, as she thought, all her interest in said estate except her interest in the dower and homestead for said sum, $225. That the deed, as plaintiff thought, was executed, not for her interest in her mother's dower and homestead, but she is advised now and alleges that said deed was prepared by the defendant himself and included all her interest in the Sam Reeder estate. That the representations to her by defendant as to the value and extent of her interest to be conveyed to defendant were false and untrue, and were known to be so by the defendant at the time, and that the value of her interest in said estate was largely in excess of the amount defendant paid her for it. That, since the sale of her interest in said lands, defendant has, as administrator aforesaid, sold all the lands belonging to the estate of said Sam Reeder except the dower and homestead, at public auction, for distribution, and that from her interest in the land thus sold appellant realized $285. That said sale is void because of the fiduciary relation of defendant at the time and his fraud practiced upon plaintiff.

Prayer that the deed executed to defendant be set aside, canceled and held for naught, and that she recover $60, the amount defendant received for her interest in said land in excess of the sum he paid therefor.

Defendant denied the various allegations of fraud, and alleged that his purchase was made in good faith.

The chancellor found in favor of plaintiff, and cancelled the deed as to the reversionary interest in the dower and homestead. Defendant has appealed.

*D. B. Sain* and *W. C. Rodgers,* for appellant.

1. Lands are assets in the hands of the administrator for the payment of debts. Kirby's Digest, § 79. The administrator has the right of possession of the lands so long only as there are unpaid debts owing by the estate. 46 Ark. 373. It was legitimate for the administrator to buy, as he was an heir, and the vendee of other heirs. 99 Mo. 585; 9 Am. & Eng. Enc. of Law (2 Ed.), 1067.

Assumption by appellant of debts owed by the estate entitled him to subrogation to the rights of creditors, notwithstanding he was the administrator. 49 Ark. 75; 56 Ark. 563. And he might lawfully have purchased at the sale. 54 N. J. Eq. 407. No question of trust could arise as to that part of the land set apart as dower and homestead. The probate court has never ordered it sold, nor could it have done so. 49 Ark. and 56 Ark., *supra;* 56 Ark. 574.

2. There is no evidence that appellee was overreached, or that any advantage was taken of her. The deed was in her possession, and ample opportunity was afforded to examine it before signing it. If she failed to read it, the fault was hers. 70 Ark. 512. She can not complain that she did not understand the deed as appellant did, unless he was guilty of such fraud as will avoid the transaction. There was no mutual mistake. 74 Ark. 336. If he had agreed that the deed was for the use of the mother, the deed would not be void. 73 Ark. 211. 57 Ark. 632.

*Feazel & Bishop,* for appellees.

1. An administrator is trustee, not only for the creditors of the estate, but also for the heirs and legatees. 27 Ark. 646; 98 Mo. 198. He can not purchase the estate for his own benefit.

8

Perry on Trusts (3 Ed.), § 205. Such purchase carries fraud on its face. 26 Ark. 445. And it matters not that the sale was *bona fide* and for a fair price. A court of equity, at the instance of the *cestui que trust,* if he applies in a reasonable time, will set the sale aside as of course. 23 Ark. 622; *Ib.* 44; 49 Ark. 242; 54 Ark. 633; 55 Ark. 85. The burden of proving the utmost good faith is on the trustee. 28 Am. & Eng. Enc. of Law (2 Ed.), 1020-1-2-3; Perry on Trusts (3 Ed.), § 195.

2. The deed is taken as an entirety, and, being void as to part of the land it conveys, it is void as to all. 63 Ark. 202; 52 Ark. 257; 10 Ark. 326; 22 Ark. 158; 53 Ark. 5.

3. All profits made by a trustee in dealing with trust property inures to the benefit of the *cestui que trust.* 40 Ark. 393.

WOOD, J. 1. At the time appellant purchased the land from his sisters, he was administrator of his father's estate, and as such had possession and control of the land for the payment of the debts of the estate for which it appears the lands were needed. Kirby's Digest, § 79. Appellant, therefore, was trustee for the creditors to see that their claims were paid. He was also trustee for the heirs to see that the lands were properly administered in the payment of the debts, and that the residue of the proceeds of the lands sold for the purpose of paying the debts should be distributed to them according to their respective interests. Appellant was a trustee for all who were interested in the estate which he had in charge to administer. *Wright* v. *Campbell,* 27 Ark. 646; 1 Woerner, Administration, § 10; 2 Woerner, Administration, § 489.

The general rule, says Mr. Perry, is "that the trustee shall not take beneficially by gift or purchase from the *cestui que trust;* * * * the question is not whether or not there is fraud in fact, the law stamps the purchase by the trustee as fraudulent *per se,* to remove all temptation to collusion and prevent the necessity of intricate inquiries, in which evil would often escape detection, and the cost of which would be great. The law looks only to the facts of the relation and the purchase. The trustee must not deal with the property for his own benefit." "But," he continues, "there are exceptions to the rule, and a trustee may buy from the *cestui que trust,* provided there is a distinct and clear contract, ascertained after a jealous and scrupulous examination of all the

circumstances; that the *cestui que trust* intended the trustee to buy, and there is fair consideration and no fraud, no concealment, no advantage taken by the trustee of information acquired by him in the character of trustee. The trustee must clear the transaction of every shadow of suspicion. * * * Any withholding of information, or ignorance of the facts or of his rights on the part of the *cestui que trust,* or any inadequacy of price, will make such purchaser a constructive trustee." Perry on Trusts, § 195. This is the general doctrine announced by our own court and recognized by practically all the authorities. See *Thweatt* v. *Freeman,* 73 Ark. 575; *Cook* v. *Martin,* 75 Ark. 40; *Cornish* v. *Johns,* 74 Ark. 231. As to the purchase of trust property by the trustee, see also *Gibson* v. *Herriott,* 55 Ark. 85; *Hindman* v. *O'Connor,* 54 Ark. 627; *White* v. *Ward,* 26 Ark. 445; *Imboden* v. *Hunter,* 23 Ark. 622, where the general rule is declared. See also 28 Am. & Eng. Enc. Law (2 Ed.), pp. 1016, 1020, where the rule and exception thereto are stated, and the numerous authorities, English and American, are cited; 2 Woerner, Administration, § 487 *et seq.*

In *Handlin* v. *Davis,* 81 Ky. 34, it is said: "An administrator or executor is not allowed to purchase or speculate upon the estate confided to him for the purposes of administration."

In all cases the burden is on the trustee to establish all the requirements necessary to bring his title within the exception to the rule. 28 Am. & Eng. Enc. Law (2 Ed.), p. 1023.

In *Coles* v. *Trecothick,* 9 Ves., Jr., 234, Lord Eldon said: "Upon the question as to a purchase by a trustee from the *cestui que trust* I agree, the *cestui que trust* may deal with his trustee, so that the trustee may become the purchaser of the estate. But, though permitted, it is a transaction of great delicacy, and which the court will watch with the utmost diligence, so much so that it is very hazardous for a trustee to engage in such a transaction." And further on in the opinion, after stating the requirements to bring a case within the exception upholding such transactions, he says: "I admit, it is a difficult case to make out, wherever it is contended the exception prevails."

The chancellor found: "That defendant, W. S. Reeder, was the acting administrator of the said estate; that prior to the purchase by him he submitted to the respective plaintiffs an offer, on

behalf of his mother, for $225 for the undivided one-eighth interest she had in her father's estate; that at the time of the submission of the said offer defendant stated to plaintiffs that after the debts of the estate had been paid that would be their respective shares, and that his mother requested him to purchase it in order to hold the estate together until her death, when it would go back to all the children; that defendant further represented to plaintiff that that part of the lands allotted as dower and homestead was not to be taken into consideration in arriving at the extent of plaintiff's interest, and that he was not purchasing that interest at all; that plaintiffs, relying on these declarations, executed the deeds in controversy; that the value of the homestead and dower land was $4,500, and that the value of the other lands was $3,500; that the $225 received by plaintiffs for their respective interests was not an adequate price therefor." It could serve no useful purpose to review at length the testimony upon which the chancellor's findings were based. It suffices to say that, eliminating all incompetent and irrelevant testimony, we are of the opinion that his conclusions of fact were not clearly against the weight of the evidence. Applying the principles of law announced, *supra,* to these facts, the conclusion reached by the lower court "that the defendant (appellant here) by reason of his relation of trustee for the creditors, the heirs and next of kin, was incapable of dealing with the trust property to his advantage" was clearly correct.

But, aside from any trust relationship, appellant was enjoined to the utmost good faith in dealing with his sisters. The dependence upon and confidence in him to do the right, engendered by the natural love and affection incident to such close blood kin, made *uberrimam fidem* imperative. *Million* v. *Taylor,* 38 Ark. 428.

2. The court did not err in canceling the deed from Annie Meredith to appellant, so far as it related to the S. ½ of the N. E. ¼, the N. E. ¼ of the N. E. ¼ and the E. ½ of the N. W. ¼ of sec. 19, and the N. E. ¼ of the S. W.¼ of sec. 20, all in Tp. 11 S., R. 27 W. While this land had been assigned to the widow of Sam Reeder and the mother of appellant as homestead and dower, and was therefore not in the possession or under the control of the appellant as the administrator, still it was embraced in

the deed which conveyed the interest of appellee in the lands of the estate which were under the control of appellant as administrator, and which deed, as we have seen, was voidable. Now, the deed to all these lands was based upon one and the same consideration, and was an entire and indivisible transaction. The contract of conveyance was entire, and, being voidable in part, was voidable as to all. For there is no apportionment of such a contract. See *Phoenix Ins. Co.* v. *Public Parks Am. Co.,* 63 Ark. 202; *McQueeny* v. *Phoenix Ins. Co.,* 52 Ark. 257; *State* v. *Scoggin,* 10 Ark. 326; *Jackson* v. *Jones,* 22 Ark. 158; *Iron Mt. & Helena R. Co.* v. *Stansel,* 43 Ark. 275. And, as to entire contracts, *Higgins* v. *Gager,* 65 Ark. 604-609.

3. The court did not err in refusing to allow appellant for alleged improvements. The testimony of appellant tends to show that what improvements he put upon the lands were under contract with his mother, she having possession and control at the time appellant claims the improvements were made, and that she paid appellant for these improvements in allowing him the use of the land for two years. Moreover, if appellant's purchase was in bad faith, as the court's findings show and the proof warrants, he would not be entitled to any compensation for improvements.

4. It was not necessary under the facts of this record for appellee to offer to return the $225.00 which appellant paid her for her interest in the land, before she could maintain her suit for a rescission of the contract. For the proof shows that appellant had realized from appellee's interest in the estate which he bought, apart from the reversionary interest in the dower and homestead, the sum of $55.25 more than he paid. He is therefore *in statu quo,* with a clear profit of $55.25.

5. The claim of appellee that appellant should pay her the amount he received from the lands sold in excess of what he paid her for her interest is without equity, since the court annulled the sale of her reversionary interest in the dower and homestead. All the proof shows that she was willing to sell her interest in the estate, and would have sold it for the consideration paid her, had her dower and homestead not been included. There is nothing in the proof to impeach the good faith of the contract between appellant and appellee except the alleged misrepresentation on the part of appellant that the reversionary interest of appellee was

not to be included in the deed she should execute for her interest in the lands of the estate. But for this there would have been no cause for setting aside the deed.

The small profit realized would not show any inadequacy of consideration.

So our conclusion on the cross appeal is that the court did not err in refusing appellee's claim for the $55.25.

The decree was right. Affirm.