■ ROBERT H. SIEGEL, Individually and as Cotrustee under Trusts Created by ALISON C. CHERRY and ADAM Z. CHERRY, as Settlors, Respondent-Appellant, v ALISON C. CHERRY et al., Respondents, and LITA A. HAZEN et al., Appellants-Respondents. ROBERT H. SIEGEL, Individually and as Cotrustee under Trusts Created by ALISON C. CHERRY and ADAM Z. CHERRY, as Settlors, Appellant, v ALISON C. CHERRY, Respondent, et al.,

Defendants.—Order, Supreme Court, New York County (Baer, J.) entered September 4, 1985, modified, on the law, the motion of defendants Lita Hazen and Morgan Guaranty Trust Company for summary judgment granted, summary judgment granted to defendant Alison Cherry pursuant to CPLR 3212 (c), and, as so modified, otherwise affirmed, with costs.

Order of the same court, entered December 10, 1984, which granted the motion of defendant Alison Cherry to dismiss the complaint against her for lack of in personam jurisdiction, without prejudice, dismissed, as moot, without costs.

Plaintiff Robert Siegel, individually and as trustee, commenced this action for, *inter alia,* conversion, misappropriation of trust assets, and alleged violations of the declarations of trust as a result of the revocation of two inter vivos trusts by defendants Alison C. Cherry, Adam Z. Cherry, and Lita Hazen. Plaintiff seeks to reimpose a trust on the inter vivos trust assets and other equitable relief. In 1978, the settlors, Alison Cherry and Adam Cherry, each established separate trusts for their own benefit at the suggestion of Mrs. Hazen, their grandmother, with funds which she had originally placed in trusts terminable when they reached their majority. The trust instruments were executed in California. Each declaration of trust was identical and provided for three trustees. Each also provided that it was to be governed by the laws of California. Siegel, a lawyer and a family acquaintance, served as cotrustee, with Hazen and the settlors of the respective trusts as the additional trustees. Siegel was delegated the power to manage the investments in the trust accounts.

In the fall of 1982, Hazen and the Cherrys decided, for various reasons, to remove and replace Siegel as cotrustee. When Siegel refused to resign voluntarily, the Cherrys revoked the trusts in November 1982 with the consent of Hazen and themselves, constituting a majority of the trustees, pursuant to article VI and the majority vote provision of article IV of the declarations of trust. Alison and Adam were then 25 and 22 years of age, respectively. Thereafter, upon the instruction of the other defendants, defendant Morgan Guaranty Trust Company of New York, the depository of the trusts, placed the funds from the dissolved trusts into two new trusts established by the Cherrys.

Special Term granted Alison's motion to dismiss the complaint based upon lack of in personam jurisdiction, without prejudice. In a separate order, Special Term later granted similar relief to Robert on a motion by the remaining defendants. It denied that branch of the motion which sought an

order dismissing the complaint, or, alternatively, for summary judgment on behalf of defendants Morgan Guaranty Trust and Hazen, holding that discovery was necessary to elicit facts which would enable it to determine the reasonableness of the trustees' action in terminating the trust. Special Term further granted plaintiff's motion to amend the complaint and denied his cross motion for summary judgment on the amended complaint.

Our search of the record reveals that there are no genuine issues of fact as to the interpretation of the trust instruments at issue which would preclude summary judgment in favor of the defendants. We conclude that the trusts at issue were revoked by action of a majority of the trustees, including the beneficiaries of each trust, as authorized by article IV (D) of the respective declarations of trust. Construing the trust instrument, as we must, in accordance with general rules of contract construction, we find that the defendants' interpretation is sound. The defendants construe the words "the Trustees" in article VI as synonymous with "a majority of the Trustees" under article IV. Article IV, entitled "GENERAL PROVISIONS", provides in pertinent part: "D. *Any action* taken *by a majority* of the Trustees shall be binding on the trust estate and may be relied on by third parties dealing with the Trustees." (Emphasis added.) Article VI, entitled "REVOCATION, ALTERATION, AND AMENDMENT" provides: "A. During such time as the Trustor * * * shall be living, the Trustor shall but only with *the consent of the Trustees* so long as he [she] shall be under the age of thirty (30), have the power to revoke and/or terminate in whole or in part this trust by a written instrument executed by said Trustor." (Emphasis added.)

Where, as here, on the face of the instrument there is no clear intention to the contrary, words should be taken in their ordinary and grammatical sense. *(Matter of Thompson* 18 Cal App 2d 680, 684, 64 P2d 984, 987 [1937]; *see also,* Cal Civ Code § 2253.) Since the subject provisions of the declarations of trust are in pari materia, defendants' construction properly harmonizes them in accordance with their plain meaning. The defendants' construction takes the entire instrument and reads the various parts together, while giving effect to each one, using each provision as an aid in interpreting the other. (Cal Civ Code § 1641; *Security-First Natl. Bank v Reynolds,* 104 Cal App 2d 697, 701, 232 P2d 318, 321-322 [1951].)

The plaintiff essentially contends that the trust could only be revoked by the settlor with the unanimous consent of

Hazen and himself, and that the settlors intended to confer veto power upon an outsider to protect themselves from potential mismanagement of the trust. Under the construction proposed by the plaintiff, the words "the Trustees" in article VI should be read as "the other Trustees" or "all three of the Trustees." Further, the words "Any action" in article IV (D) should mean, instead, "Any action other than revocation". The plaintiff's construction of the declarations of trust is strained to the extent that it disregards the plain meaning of certain words, adds others, and in so doing grafts an unwarranted exception onto article IV. *(Security-First Natl. Bank v Reynolds, supra.)*

Moreover, as the trust instrument consistently speaks of "the Trustees", by logical implication under plaintiff's construction almost every action by the trust would require unanimous agreement. Such a construction would contravene the fundamental rule that a trust should be interpreted so as not to diminish the rights retained by the settlor. *(Estate of Cox,* 8 Cal App 3d 168, 87 Cal Rptr 55 [1970].) In our view, while the trust instrument is not a model of clarity, no interpretation of its provisions supports a finding that the settlors and Hazen intended to confer a veto power over trust operation and revocation upon an outsider. California law does not prohibit or disqualify a trustee/beneficiary from exercising his discretionary power to distribute the trust corpus to himself. *(Compare,* EPTL 10-10.1; *Matter of Seidman,* 58 AD2d 72 [2d Dept 1977].) Thus, irrespective of their status as beneficiaries, the Cherrys reserved the power to vote as trustees, even for purposes of consenting to their action as settlors in revoking their trusts.

The plaintiff alternatively asserts that revocation violates the trustees' fiduciary obligation to the contingent beneficiaries named in the respective declarations of trust. However, we do not believe that the consent of these beneficiaries is required under any interpretation of the trust instruments. Having determined that the revocation of the trusts by action of a majority of the trustees is valid, the judicial function is exhausted. The motives of the trustees are irrelevant.

Parenthetically, we note that the plain purpose of the complaint is future fees and commissions to be earned as trustee until the settlors reach the age of 30. However, under California law, as a "mere bare trustee", plaintiff clearly has no standing to maintain an action for the continuance of the trust. *(Eakle v Ingram,* 142 Cal 15, 17, 75 P 566, 567 [1904].) Since we grant summary judgment in favor of all the defen-

dants (CPLR 3212 [c]), we dismiss, as moot, the appeal from Special Term's order which granted Alison Cherry's motion to dismiss. Concur—Kupferman, J. P., Sandler, Asch, Rosenberger and Wallach, JJ.